Our final case is 24-1170 Albert v. Lierman. Mr. Feldman, whenever you're ready. Good morning. May it please the court, my name is Howard Feldman. I represent the Comptroller of Maryland, Brooke Lierman, and with me at council table is my colleague, Mr. Frye. I'd like to first address plaintiff's argument that the Takings Clause abrogates or creates a new exception to the 11th Amendment. This court in Hoodoo rejected an argument that the 5th Amendment Takings Clause, that claims against state officials are exempt from the protection of the 11th Amendment, and held that claims against state officials sued in their official capacities for retrospective money damages are barred by the 11th Amendment when the state courts are open to adjudicate claims. Here, Maryland Commercial Law Code Section 17320 allows persons aggrieved by a decision of the Comptroller to pursue an action in state circuit court. In Zito, this court held that Hoodoo remains good law after the Supreme Court's decision in Nick, which overruled Williamson County's requirement that a federal takings claim is not ripe until a property owner complies with a state judicial procedure to seek just compensation. But as this court explained in Zito, Nick did not undermine Hoodoo because it did not address sovereign immunity as it involved a lawsuit against a town, not a state, like this case. And the Supreme Court's decision in Duvalier confirms that where state law provides a cause of action for an alleged taking, that such claims should be adjudicated in state court. Counsel, I just want to make sure I understand kind of the structure of your argument. Just assuming hypothetically I agree with everything you have just said, that under Zito we have affirmed you can't generally bring a taking clause compensation claim in federal court. Does it follow that, therefore, this claim can go forward only if it falls within the ex parte young exception? That is correct. Okay. You're not saying that even if it's within ex parte young, it doesn't matter? That's correct. Okay. Thank you. But that dovetails nicely into my next argument, that plaintiff's claim in this case does not fall within the ex parte young exception to the 11th Amendment for two reasons. One, it seeks retroactive relief. It seeks damages claim. And there's not an ongoing violation of federal law. First, I'll touch on the issue of plaintiff's claim seeking retroactive relief. Plaintiffs ask in their complaint, the district court, to determine the proper measure of compensation for the class, which is defined as all parties who are owners of abandoned property in state custody. Plaintiffs seek a declaration that the state's failure to pay the time value for the state's use of their money or interest on abandoned property is a taking for which they're entitled to just compensation. And they seek an injunction mandating damages payment retroactive for past time periods to the plaintiffs and the putative class members. By acknowledging in their brief that the clock is running on already accrued just compensation, plaintiffs concede that they are seeking recovery for what the Supreme Court in Edelman described as a request precluded by the 11th Amendment to make reparation for the past. Can I ask a question about that? Because in the district court, and I'll ask you to tell me whether or not the district court got this right, but Judge Rubin's opinion says with respect to this issue, defendant allows that he construes the complaint to seek only prospective and injunctive relief, but argues that were the court to construe the complaint to seek damages or retroactive relief, those claims would be barred by the 11th Amendment. So that sounds almost like a concession below that this case fits within Ex Parte Young. It wasn't a concession below. I will admit that the language in the motion could have been better worded, but the reality is, Your Honor, the complaint says what the complaint says what the complaint says. And the complaint clearly seeks money damages and therefore can't proceed under the 11th Amendment. And the fact that the plaintiffs seek to recover damages for past time periods was reinforced in the submissions in their October 28th and December 12th submissions, where they again said six times that they seek money or debt compensation that is accrued just compensation. And the dictionary definition of accrued is accumulated over a period of time. So let me ask you this. Perhaps maybe the argument is there may be a retroactive component to the relief that's being requested, but to the extent that the plaintiffs are seeking to get the state in compliance with what they believe to be a takings violation, why isn't that a prospective form of relief that satisfies Ex Parte Young? Because there's not an ongoing violation of law, Your Honor. You're not paying interest. According to them, that's an ongoing violation. Well, that's the argument that there's a violation now because when I submit a claim in the future, the state won't pay me interest. And that's not a valid argument in the state's view, Your Honor. The plaintiffs do not assert that a taking occurred when the underlying property, the principle I'll call it, was taken into state custody. What they're claiming is that there's a failure to pay more than the principle that's due. So the soonest that a taking might occur as to interest is when the state rejects claims that are made over and above, by parties who seek over and above the principle amount that was taken into custody. Because until a claim is made, the timing of which is solely controlled by claimants, be it days, weeks, years, or decades, the state is under no duty to pay the principle amount, let alone more than the principle amount, and frankly has no ability to discharge any payment obligations to unknown or even unlocatable owners of abandoned property. Based on Nick, the plaintiffs argue that under the self-executing takings clause, that the claim sprung into being as to the interest when the underlying principle was taken into custody. So let me make sure I have the history here correct, but at some point Maryland did expressly allow for interest payments on so-called abandoned property, right? That is correct, Your Honor. And they repealed that, I guess the legislature repealed that portion of the statute? Yes. So isn't it clear that the state is presently not in compliance with at least the claim that under the takings clause that they're not going to be providing compensation? They haven't in the past. They're not going to do so in the future. So why isn't at least that portion of the claim a valid claim for prospective injunctive relief? I'll respond to that in two ways, Your Honor. First, essentially what that argument is is that there's a violation of law now. The violation would be that there's a taking without payment of just compensation. But under plaintiff's theory and the hypothetical you just posed. Well, that's not a hypothetical. That's a state of affairs, right? Fair enough. But under the question you pose, the clock is ticking and interest is accruing before the state is even under a duty to pay any amount to a claimant because the state is unable to pay on a claim until a claim is submitted to the state. And this dovetails into one of the standing arguments we're making. But the state has no ability to pay the underlying principal. So how can there be a taking without just compensation before there's even a duty to pay the principal amount, let alone any interest? So is that more of a standing argument? And if so, why would we even consider standing in this interlocutory appeal? Well, that's the question that was in the supplemental briefs, Your Honor. The standing argument that's being made in this case is that plaintiffs, by not having submitted claims, haven't complied with the Williamson County requirement that the initial decision maker have the opportunity to make a claim. It sounds to me like all of this is actually a merits argument, which I find very interesting, like whether people really would be entitled to interest for a period of time when the state would not have known that they were owners of the property. Excellent merits question, but I don't see how that bears on either standing or the Eleventh Amendment. Well, the standing issue, Your Honor, is that the complaint alleges that the plaintiffs are owners of abandoned property. The complaint does not allege that the plaintiffs have submitted claims to abandoned property. It doesn't identify any property that the state allegedly has. It doesn't allege whether such property was income producing in the hands of the plaintiffs before it was turned into state custody. The finality requirement from the Supreme Court's decision in Williamson County is alive and well after this Court's decision in Nick, and the requirement here is concerned with whether the initial decision maker, this is purely a standing issue, has arrived in a definitive position on the issue that is alleged to have inflicted injury. The finality requirement was not at issue in Nick. Can I just, as long as we're talking about that, can I just ask you?  You are not disputing that under Maryland law right now the comptroller cannot pay interest on these claims, right? The statute does not authorize that. Okay, great. Can I ask you a question about Ex parte Young? Sure. I really am wrestling with this conceptually, and I'm hoping you can help me. So as I understand it, the central question is whether what the plaintiffs are seeking here is prospective or retrospective relief. And you say it's retrospective because they are seeking interest that goes back in the past. And they say it's prospective. From now on, when you get a claim, you have to pay just compensation consistent with the takings clause. So it's entirely forward-looking. It only applies to future claims. How do I know which of those is the right way to conceptualize this case? I think the way to think about it, Your Honor, is they're seeking for claims that are resolved in the future, they're seeking to reach back in time and be paid interest on what they allege to be $1.9 billion worth of assets in state custody. That's a substantial amount. Well, I don't think the amount actually has that much to do with the Eleventh Amendment. Can I say, it looked to me... Go ahead. No, Your Honor. It sort of looked to me from Edelman and the Edelman line of cases that, like, the crucial time we're looking at is the time of the judgment. The federal court judgment can only have prospective effect. So what if the plaintiffs were asking for a declaratory judgment that's starting the day of the judgment, interest starts accruing on that day? Like, you don't have to pay interest going back before the judgment, but as of the day of the judgment, when you pay out these claims, you're going to have to pay principal plus interest, interest starting as of today. That would be prospective, right? Agreed. Okay. But you don't think the district court looked at the claim that way? I don't. And I don't imagine the plaintiffs view the claim that way. The district court, in the district court's assessment, the interest would be payable going back in time, not prospectively from the date of the court's order. So interest could only accrue under Ex Parte Young for it not to be retroactive, for it to look forward only and not reach back for days, weeks, decades, or longer. So couldn't we find that the case could only go forward with respect to those claims or that remedy? That would fit into the state concedes that that would fall within Ex Parte Young, provided it's prospective relief only, and interest would accrue only going forward, not retrospective, but going forward from the date of the court's order. And that there would be, and declaratory relief, of course, would also be available, but that would be the calculation of the state going forward or the method of calculating going forward. You are correct, Your Honor, but there's still a standing issue that . . . Which is not properly before us. Isn't that right? The standing issue is inextricably intertwined with the issue of whether, as to immunity, the plaintiffs argue that they need not submit claims and that the clock started running on a violation of the law as soon as the state took custody of the underlying asset. And as to standing, the plaintiffs argue that they need not submit claims to the controller in order to comply with Williamson County's finality requirement. So in order to look at the issues of whether there's an ongoing violation of the law under plaintiff's theory and whether there was compliance with the finality, with Williamson County's finality requirement, I see I've completed . . . You can answer Judge Berner's question. Requires an assessment of the same case law, which makes the case like this Court's decisions in Elegant Massage and Scott, where the same legal issue was tied to the immediately appealable issue and the issue that was not immediately appealable. Thank you very much. Thank you. Ms. O'Dell. May it please the Court, Julie O'Dell on behalf of Plaintiff Apelli, Stephen Albert, and Barry Diamond. Your Honors, I would first like to start with the pendant jurisdiction issue that my friend just ended with. Despite his contention to the contrary, the issues of standing and sovereign immunity are not inextricably intertwined. And we know this because this Court ruled on that issue in the Industrial Services Group v. Dobbs case. That Court explicitly ruled . . . the Court explicitly ruled that considerations of standing and considerations of sovereign immunity do not answer the same question. Here, sovereign immunity, the question is whether we can bring the claim against the party we brought the claim against. The standing question is when can we bring the claim? The standing issues in this case, and I say that because the standing issues in this case, the only standing issue that's raised is injury. When does the injury occur? And so, the inquiries are different. And so, the issues are not inextricably intertwined. And the Court should not exercise pendant jurisdiction over issues aside from sovereign immunity. I'll next turn to my Eleventh Amendment immunity argument. Can you address directly the question that Judge Harris asked and then to follow on by Judge Berner that the Court could affirm the District Court's sovereign immunity ruling but limited to prospective claims for interest that would not allow claimants to seek interest retrospectively? Sure. So . . . First of all, is that your claim? That's not our claim. That claim, that works, right? If we say from the time of an injunction forward, and we look at the injunction forward as the accrual period for just compensation, clearly that all is prospective. But what we're asking for here is a declaration, an injunction, that would bring the Maryland Act into compliance with the Fifth Amendment takings clause. And by bringing the claim, the Act into compliance with the takings clause, then when future claimants, when claimants make future claims, the Act will prescribe a constitutionally correct way for those individuals to receive just compensation. And we learn from cases like First English that where there is a temporary taking, that the individual is entitled to compensation for the duration of that taking. So the relief is prospective, and what we're asking for here is for future claims. But to look at the duration of the taking . . . But that begs the question then as to whether or not that's a claim that's properly in federal court or some other body. Well, it is properly in federal court because it still fits within Ex parte Young. Can I . . . I really do struggle sort of conceptually. I understand how your framing of the case makes sense. But at least for standing purposes, right, and on the merits, your allegation is that the constitutional injury takes place before any claim is submitted. The constitutional injury is when the property is taken and put to public use. That's basically the violation. Yes, and that's what we learned from Nick. That's what we learned from Nick. But we learned from Ex parte Young that you can't get relief for a monetary loss resulting from a past breach of a legal duty. And you're telling me that this breach is past, and you want monetary relief for it. So I'm really having trouble putting those together. So it's not a past breach because we're talking about future claims for the property. But it's future claims that will date back to a past breach. As of the day you took this property, you owed me interest. Right. Our argument is the accrual period goes back to the time of the taking, and the claimants are entitled to compensation for the full time that the government took and used their property. Otherwise, we're giving the government an interest-free loan. So every time you say accrued, I get anxious because we have case law saying the other thing you can't get under Ex parte Young is accrued monetary liability representing retroactive payments. And I'm really worried, again, that that is what this looks like. So the better way to look at this, instead of the accrued or non-accrued, is future claims versus past claims. And we see that demonstrated in Edelman. So in Edelman, we have claims that were prospective in nature, claims not yet made for property that was taken. I'm sorry. I've given you a wrong, an incorrect fact pattern. But we have prospective claims for relief, and we have what the court categorizes as equitable restitution for past claims. Here, if we were asking the court to compensate property owners who have already made a claim to the comptroller for their just compensation, received only the principal and no remedy for the taking in the form of just compensation, that certainly is equitable restitution and is barred to be heard in this court by Ex parte Young. But that's not the situation that we have. We're talking about future claims. Thanks. I'd like to also address my friend's assertion of when the ongoing violation issue here. The comptroller are using- Ms. O'Dell, I'm sorry to interrupt you, but I'll ask you the same question I asked your colleague on the other side. Your interpretation of the claim is the same way you think the district court viewed the claim, that is that it's entirely consistent with Ex parte Young to seek, so long as you haven't filed a claim before, if you file a claim prospectively, but you seek accrued interest, the district court viewed that as consistent with Ex parte Young. Yes, that is our position, although I'm hearing from the court today that there is some wrestling, and I think other courts have wrestled with this too, about this issue of when just compensation accrues and what can be paid, and I think the just compensation remedy can be fashioned in such a way and the declarations that we seek and the injunctions that we seek can be fashioned such that it's prospective and it's from the time of the injunction. I think that future claims are prospective and we can award just compensation for the time of the taking, but if there's an issue with that relief, that part of the relief, that time period, that cut, being viewed as retroactive, then we can fashion the relief such that it's completely forward-looking. My friend on the other side has argued that there's no ongoing violation here because no claim has been made yet, and that's not our argument, that's not our position, and that's not what the Supreme Court has said in Nick. Nick says a taking happens at the time that the government takes property and puts it to public use, and despite characterizations otherwise in the briefing, if we look to the complaint, we see that we argue in the complaint that, or we state in the complaint, that the taking occurs at the time the property is taken and put to public use, and that's a present tense violation of the takings clause. We don't allege that it's the nonpayment of just compensation that then transforms this into a takings violation. The taking happens at the time the state takes the property and puts it to public use. As I do not contend that the state should, or that the court should reach standing in ripeness claims in this case, but because my friend on the other side spoke about them, I'd like to speak about them too. Here, the state makes an argument that we don't know whether defendants are the owners of the property that they state that's been taken, but the comptrollers... Can I ask you, I mean, they don't state in the complaint any particular property that's been taken, right? They just say some undefined property has been taken. Right. Okay. They don't state particular property because the comptroller's website doesn't give that level of detail. How do they know that they have property that's being held by the comptroller? Is it just a name match? It's a name match. Their names aren't that unusual. How do they know it's them, given that they're not saying, oh, yeah, this is me, that was my bank account? They don't allege any particular property.  So there's nothing more than a name match. There may be a town match, but I don't recall off the top of my head if that's correct. But say it is just a name match. If that's not enough to allege in a complaint, then nobody is going to be able to... No, that's not true. It's like I could allege I see my name, and I remember there was that bank account. And then when I went to college, I forgot to close it, and it's probably been sitting there for 20 years. That's my property. I'm specifically alleging you have my bank account. Sure. So, no, the complaint does not have specific allegations about the plaintiff's recall. I'm just suggesting that it wouldn't eliminate this kind of suit. And also, am I right that the complaint does not allege that they intend to submit claims for property? There's no direct allegation in the complaint that they intend to submit claims. Why not? Sorry, go ahead, Your Honor. Why not? By bringing the complaint itself, they are seeking the declarations and the injunctions that they are in the complaint so that when they make claims in the future that they are going to be paid the just compensation due to remedy the takings violations that they have suffered. It just seems like sort of a notable omission given all the standing case law that says, like, we're looking for an allegation that you actually plan to bring a claim. I was just wondering if there was some reason that you were free to share about why that allegation wasn't made here. No. And I take your honor's point, but I would say that the plaintiffs pursuing their rights in this litigation is proof of the fact that once this case is resolved and hopefully in their favor and in a way where in the future they may make claims and receive just compensation, that that is clearly indicative of their intention in the future to certainly make claims. As to the comptroller's position that there is a finality requirement that we should be, that the plaintiffs should be required to submit a claim to the comptroller and the failure to do that deprives them of standing. Pactel explicitly did away with administrative exhaustion requirements like that raised by the comptroller when we know definitively how the government is going to act when any claim would be made. Your honor's picked up on that in your questions to my friend, and I think that that's correct. Here the act explicitly does not provide for the payment of just compensation, and as you noted previously in the 2004 amendments to the act, it took away the ability for payment of interest on certain types of property. So we know there is finality here. We know that just compensation is not going to be paid. So we don't need to submit a claim. We have standing. We have finality. My friends on the other side in their opening comments did not address the sufficiency of the takings claim and the issues of abandonment and whether the Supreme Court's holding in Texaco is applicable to this case. Like the pendant ripeness and standing issues, I don't think that the court need get there, but because it was raised in the briefing, I'll address it briefly here. The comptroller in their arguments refer to the abandonment issue that's raised in Texaco as an attack on injury. That is not a standing injury attack. It's really a sufficiency of the claims attack and an attack on the merits. And so it's improperly regarded in regards to standing. But with that being said, we know in Webb's Fabulous Pharmacy that the Supreme Court reiterated the longstanding rule that a government must pay just compensation whenever it makes a physical taking, even a temporary one. But to avoid this, the comptroller looks to Texaco and relies on an exception for abandoned property. But as the Supreme Court in Tyler v. Hennepin County made clear in 2023, the Texaco decision only applies in very narrow and very strict criteria which are not present in the act. Initially, the statute has to declare property abandoned and it has to extinguish the property owner's rights in it. Counsel, as long as we're talking about the merits, I hear what you're saying about Texaco. But I am wondering how this is supposed to work when a taking happens not by virtue of something affirmative. You know, the state doesn't reach out and take property on purpose. Like the owner has been inattentive to the property. The state steps in, but it literally doesn't know at that moment whether it's taking someone's property or whether that property is abandoned. And it does seem a little bit unfair maybe to charge interest for a period of time where the state was not on notice that it was in possession of someone else's property. Well, so first of all, the state takes the property after a very small period of unuse. So in Texaco, we see abandonment after 20 years. Here, Tyler V. Hennepin County tells us that non-use for something as short as three to five years certainly is not long enough. Right, it's not long enough for the state to know for sure it's been abandoned, but it also doesn't know it hasn't been abandoned. And given that it doesn't know it hasn't been abandoned, I'm just asking about sort of the equities of then turning around and telling the state, well, you didn't know that was someone else's, but then 50 years later someone comes forward and now you owe 50 years of interest. Well, the issue also is the misleading use of the term presumed abandoned in the statute. So the use of the word abandoned in Texaco refers to a total relinquishment of property rights. We don't owe payment to abandoned property owners. And I say owners lightly because if property is abandoned, there is no owner. There's no one to pay to. Here, the comptroller admits the unclaimed property statute is purely custodial in nature. Title of property always stays with the property owner. And so the property is not abandoned. The owner is entitled always to reclaim that property under the statute. And so if you take that property and the property owner retains title and the state puts it to public use, then a taking occurs, which is deserving of just compensation as a remedy. So long as we're on the merits, I guess the issue of the equities works both ways because the state then uses that property. It either sells it, right, if it's not cash. If it's money, then it takes it and uses it for public use. Had it not had that money, the state would have had to fund those uses by some other way and presumably pay interest on bonds and or other monies that they would have had to obtain. And so it doesn't strike me as all that inequitable that they should pay. And I don't know where the merits ends up here, but the equities, my point is the equities go both ways. I'm over time, but I'd like to quickly address that. So the Maryland's unclaimed property statute, and this number goes back a few years, so it's higher now, but has brought in over a billion dollars worth of unclaimed property. And in 2023, the comptroller brought in $315 million in unclaimed property funds, and it returned only $81 million to rightful owners upon claims. And so what is set up is a special fund, and that's when the money comes into the state of Maryland, into the treasury, it comes in first to a special fund. And so if we pay the claims out of the special fund and also allow for the payment of just compensation out of that special fund, we never have to touch the treasury. So we're never looking at the use of public funds to pay takings claims or just compensation to remedy past takings. All right. Thank you very much. Thank you. A few points on rebuttal. Thank you. As to the last point counsel was making, money goes initially, money or the proceeds of abandoned property initially goes into the special fund. As you referred to, that special fund is capped at $50,000. Anything over that, and which there is a lot over that, gets commingled into funds set up for various purposes like the Maryland Legal Services Corporation, Crime Victims Fund, and ultimately to the general fund if it goes over the caps that have been established for the amounts that are supposed to go into those funds. I next want to address the point Judge Harris was making about the fact that plaintiffs have only alleged that they saw their name on the comptroller's website, and that's all there is, is names. I hearken the court to look at several cases where that same allegation was deemed insufficient. That's the Raymond, the Nelling, and the Salvato cases where the plaintiffs basically alleged the same, particularly the Raymond and Nellinger cases we cited in our reply brief, where the plaintiffs alleged we saw our name, and that's just not enough. There's still too many contingencies at play, and in the Light v. Davis case, which was from the District of Delaware but affirmed by the Third Circuit, the court said it wasn't simply enough to say in the future I may assert a claim. Were any of those cases interlocutory appeals? I don't recall. I think the answer is likely no, and so that, again, begs the question that you may be right, but is this the time to decide that? Well, and that's the argument that we make, Your Honor, about the issue of standing because of the relevance of Nick, Pachtel, Williamson County to the questions of standing and the issue of whether there's an ongoing violation of law for purposes of Ex parte Young. It requires an analysis of the same cases because plaintiffs, under the standing issue of alleged, they need not comply with Williamson County by submitting a claim to the state. So the Salvato case expressly references Williamson County. The other cases, Light v. Davis dismissed the case on ripeness grounds, but it all goes to the same issue of not submitting a claim. On the issue of whether there's a constitutional violation, a constitutional violation takes place when there's a taking without payment of just compensation, and there can be no obligation to pay just compensation when the state doesn't know who to pay. So the constitutional violation can't arise until at the earliest a claim is submitted because it's only at that point that the state can discharge a duty to make payment to a known or locatable person. On what Judge Diaz, you described as the merits issue, I want to make a couple quick points. Plaintiffs don't dispute the ability of the state to take custody, including permanent title, which is not what the Maryland Abandoned Property Statute does, to take permanent title to abandoned property in order that the property can be used for the general good. While the Texaco case involved an abandonment period of 20 years, other decisions by the Supreme Court pertaining to abandonment statutes have involved much shorter periods of time. And these cases are cited at page 21 of the state's opening brief. For example, in U.S. v. Locke, the plaintiff failed by one day to make an annual filing with respect to a mining claim valued in the millions of dollars, resulting in an automatic abandonment of, and a cheat to the federal government, of mineral deposits covered by the claim. And in Anderson National Bank v. Locke, the Supreme Court held that Kentucky did not violate the Constitution by cheating bank accounts presumed abandoned after just 10 years. Can I ask a question? You made a good point about the fact that Maryland, in theory, could have passed a statute that would permanently grant title to abandoned property. It hasn't done that, to its credit, I think. But it could do that, is what you said, right? The Maryland statute is based on one of the many uniform acts, for example, the UCC. And most states have adopted a version of that act. The act was adopted by Maryland, as it was other states, for the remedial purpose of protecting property owners from holders who disappear, go out of business. The Maryland act provides for basically a long-term reclaiming service for people who have been inattentive to, ignorant of, or just forgot about. Like Judge Harris's college bank account? It only had 20 cents in it, so I just forgot about it. You may be recused. If you think about it, if there were longer periods of time, which the law doesn't require longer periods of time, but if there were longer periods of time, you lose the remedial purpose because the longer period of time that you wait, then the more likely it is that property will disappear, holders will go away. I'll ask that the court reverse the district court's failure to provide dismissal on grounds of immunity. Thank you. Thank you, Mr. Feldman. Thank you both for your arguments. We'll come down and greet you and adjourn court. Sanidad.
judges: Albert Diaz, Pamela A. Harris, Nicole G. Berner